Good morning, Your Honors. Frank Sproul is appearing for Petitioner. And what I'd like to do, if before I get into the categorical approach, which I think on the particular facts of the statute will be dispositive, I think a plain reading analysis is appropriate here. And let me start with first principles, Aristotelian. This was charged as a misdemeanor and it was convicted as a misdemeanor. The question is, can a State law misdemeanor be an aggravated felony? I thought our Court had already decided that a State misdemeanor can be an aggravated felony. I don't think so. I don't think it's in the same context. I believe you're referring to Robles-Rodriguez. That's in the Sentencing Enhancing – Sentence Enhancement Guideline for Reentry After Deportation, Aggravated Felony. This is the bedrock determination that guides basically when the government institutes deportation proceedings. And I think in that respect, and indeed in Robles-Rodriguez, it references the Federal Drug Trafficking Statute, which says that two – two possessions is transmuted into an aggravated felony. That's different. That is very different than what we have here. I mean, Congress obviously intended under this section, rape, murder, sexual abuse of the mind, clearly the most repugnant crimes in the criminal law. I think it's strange reason to say that a misdemeanor is of the same gravity. And again, in all the other contexts, not – and not in every statute under the aggravated felony scheme do they reference a Federal statute. But at the very least, it provides guidance. Crime of violence, one year. Crime of theft, one year. We are – the touchstone is a felony. So at the very least, before I get into the categorical, I think it's appropriate and it certainly gives us guidance as to what constitutes an aggravated felony. And I believe it's strange reason and language to state that a misdemeanor can be an aggravated felony. I know the government says it's a plain reading because they focus on sexual abuse of the mind. Well, you have to ignore some language. You have to ignore the whole architecture of the – of the statute. I think in order to avoid sometimes a categorical approach, I think a plain reading analysis can guide us. Having said that, I'm happy to get into the particular facts of this rather curious statute. Assuming arguendo that we can determine that a misdemeanor can be an aggravated felony, this particular statute clearly is uncharted waters here. It's not statutory rape. This is a crime that can be committed without any touching whatsoever. That's the nature of it. Well, without any touching by the perpetrator. Absolutely. Between the parties. It is sufficient that the victim be coerced into touching. No, absolutely not. The cases that I quote in State law, there is no touching whatsoever. This is a statute you missed. This is a statute on annoyance. Oh, I'm sorry. I'm mixing my cases. Yes, you do. I don't. Never mind. Section 6.7.7, which is also. I thought this was the one annoy or molest. Interfere with. I've only seen the word annoy before in fish and game statutes, actually. People who annoy the animals are guilty of fish and game offense. I've had some judges that say I annoy them, but that's another subject. Let me ask you a question on the record. The documents, the charging documents that were in the record, there was originally a 288A violation charge. That was dropped? That was dismissed, yes. Okay. So we're solely looking at the 647. Absolutely. And again, that was charged as a misdemeanor. That was the second count. And that's what he pled. Counsel, I've been trying to figure out what annoy means. And I've been coming up with some hypos. I know with animals, it's flying your airplane close to them. But I've been trying to come up with hypos for annoying a child. And I was thinking an irritating aunt who asks the child intimate questions, perhaps about her developing body, might be charged under this statute. Someone who sends a child affectionate e-mails when the child feels no affection toward them. Someone who sends the child an undesired gift and then keeps complaining to her mother about why she hasn't gotten a thank you note. Are those, do they count? I mean, when you use the word affectionate, there has to be something. And again, it's an odd statute where the actor, the defendant, needs to be motivated so that the statute does look at the intent. So this aunt who makes affectionate remarks, if they're overly affectionate, if they sort of descend into something vaguely sexual, I assume that you could be charged under the statute. Absent that, it's just an annoying aunt. What's the State case that we should look at to figure out exactly what is required? Well, I think the, on page 10 of my briefing, people be Gomez and people be Thompson makes it clear that, again, this is an odd statute because you have molest, annoy, disturb, and annoy. They obviously encompass a wide range of conduct. Well, don't we, under Karskadon, we actually, under Karskadon, it's a California Supreme Court case, and we actually, it says ordinarily the annoyance or molestation which is forbidden is not concerned with the state of mind of the child, but it's the objectionable acts of defendant which constitute the offense. Objectionable acts, right. Now, again, if we're going to go into the categorical approach here, there's not, there is no sexual act. There is the, again, the conduct of the actor is key to the statute. The victim need not have any apprehension that there's any sexual going on. It merely needs to be annoyed. Now, you can look to the statute and say it seems to us, simply reading the statute, that this might constitute an offense. But if you look at the case law, it seems to me the two cases that are best for you, and if we look into the cases for the sole definition of what constitutes an offense, one would be the Thompson case that you cited, and the other would be the Sheridan case that neither of you cited. But in the Thompson case, what the man did was to drive his car slowly past this little girl who was riding her bicycle, stopped it a couple of times, had the hood up, she rides by, he looks at her, and to the extent that there's an offense, it is that he looks at her, he moves his lips, maybe whispering, he shakes his hand. She becomes alarmed after having seen him on these streets during a very short period of time for, I think, a total of ten times. No physical contact between the two, no speaking between the two. He's convicted. And the question is, is that sexual abuse of a minor within the meaning of the federal aggravated felony statute? The Sheridan case is a man takes girls in the car, takes them to a place where they don't want to go. When everyone gets out of the car to relieve themselves, the girls run away. Boom. End of case. He's also convicted. Is that sexual abuse of a minor? Why, I submit to you it's not. It's simply because, again, we're looking at now, we're going to the categorical approach. Those are real-life cases. They're not hypos. And I think... Those are both convictions in California under this statute. And, again, I mean, again, if we're trying to also, you know, we're trying to make the statute a harmonious whole, there were also misdemeanors. We ought not to forget that, that, number one, the conduct itself, I don't think, fits the common-sense definition of sexual abuse of a minor, i.e., Medina. And, two, the California legislature decided that this behavior, while not admirable, is a misdemeanor. I think when you take the categorical and the plain meaning, and I think they collapse into one. I think they dovetail into one another. I think the inescapable conclusion that this is not an act of sexual abuse. So the... I guess the thing I find interesting, you can be convicted under this statute for an objectionable act, provided your state of mind is such that it's with some sexual motivation. Natural interest in children is actually the language. That when you're convicted, it's a state of mind. And that when we talk about sexual abuse of a minor, that's an action. So you could be convicted for doing something to a child with a state of mind, driving alongside a child with a state of mind of some kind of sexual thing. But you've never actually abused a child. Precisely, yes. I mean, that's the nature of the statute. So if we were to apply the modified categorical approach to your client in this case, what would we look to? Well, based on the last two cases, it's very important. In this case, we have nothing. We have this. We have the complaint, and then we have a minute order demonstrating that count one was dismissed and count two he pled to. And so we don't have anything in it. It's totally extreme. I know the facts of the case, but they're not part of the record. I mean, basically, he claimed innocence from the beginning. It was a dispute with a neighbor. The better part of valor, he took the misdemeanor conviction. Had no idea he was going to end up here. But it's not part of the record. If we were to remand for an application of the modified categorical approach by the IJ, is there anything that the service could put into the record that would tell us in a way that of which they could take notice of what the underlying facts of conviction are? I don't think so, Your Honor, especially just the way a case like this would work out in a state court. I mean, the modified categorical, we don't really get even to the police report. I mean, we have the charging document, the plea. It was not a plea. Was there a plea agreement? Okay. What was in the plea agreement? There must be a predicate statement of facts. That would be very nice if they did that in a state court. They don't. I mean, literally, we're striking count one. Do you understand the rights you're giving up? In this case, he had been in custody, got credit for trying to serve. After he pled, he walked out. There was no allocution. That doesn't happen in state courts. Maybe it ought to, but it doesn't. So I don't think we would be all that useful. If it was remanded, I don't think we're going to have anything. So you're saying if we were to hold that we apply a modified categorical approach to this statute, the government would lose because it wouldn't be able to meet its burden of proof using documents that, since United States v. Taylor, the Supreme Court said we could use. Right. There wouldn't be any permissible documents, and, yes, that would be my position. Okay. Thank you. Thank you. This is a completely different statute. It's the child's. Counsel, when I read those California cases, even when they talk about how there has to be some sexual idea, at least in the mind of the perpetrator, they keep the mind of the perpetrator. They don't have a qualifying language, like for the most part. And then there's some conflicting language, like read the word worry in the ordinary sense of the word. I'm concerned about whether the broad reach of the statute is such as to take it potentially far away from sexual abuse of a minor. Well, the original intent of the statute, I mean, this is really an old, old. I don't care about the original intent. What I care about is what it says. Because criminals can be convicted under what it says, even if the prosecutor is charging inconsistently with what the legislators many years ago had in mind. Yes, that's true. There are those qualifying terms, as you've indicated. And this Court has been you've not had the opportunity to make this determination as to whether or not this kind of violation falls under the aggregated felony definition. But the Board has. The Board looked at this case and dismissed it on its reasoning and measure. This is your Chevron deference argument again. Have you yet to cite a case, come up with another case that we should apply Chevron deference in this area? There's plenty out there. I just don't have it. The statute is the INS construing that it is charged with administering in this case. I'm sorry. What was that? When we determine whether we're going to apply Chevron deference or not, we look at what is the statute that the administrative agency is charged with administering. And that's why we defer to it, because it's within the agency's expertise. Right. How is the construction of a California criminal statute within the INS's expertise? It's not. It's not. It's our, the expertise is in the definition of what constitutes an aggravated felony, in this case the rape, murder, sexual abuse of a minor. And the Board, it's kind of, it's kind of like a real fine line, I know. I struggled with this myself in preparing for this kind of argument. It's the Board, the agency is not construing, is not applying this particular part of the California Penal Code. It doesn't have any expertise in administering this particular section. But haven't we already held that we determine as a matter of law what an aggravated felony is? The court will, yes, can determine as a matter of law. It will review the Board's decision de novo, because that is a matter of law. It will review the Board's decision. And the Board has determined in this case that a conviction under Section 647.6, the Child Molestation Statute, is sexual abuse of a minor and therefore an aggravated felony. Let me ask you this. Take, for example, the facts of the Thompson case. That's the case where he's driving his car slowly, moving his lips in some fashion, maybe whispering, shaking his hand. She sees him ten times. A couple of the times he's stopped by the side of the road with his hood up. There's no physical contact between the man and the girl. Is that sexual abuse of a minor, in your view, within the meaning of the Federal statute? Yes. Because? Because the actions of the perpetrator were done with a sexual intent. So you can have sexual abuse of a minor with no touching by the perpetrator, with no speaking between the two, and from the sound of the narrative in the case, they never got closer than, oh, probably five feet from one another. Yes. Is there a California case that says that a defendant is entitled to a jury instruction that unless the jury finds a sexual intent or purpose, it cannot convict? Yes. I believe there is one. And I – Which is the case that narrows it down to that for the jury? There's a California case. I can't think of it off the top of my head, but there is one that says exactly that, stands exactly for that proposition. It's a California Supreme Court case. But is that relevant for purposes of our analysis? It's relevant to me. All you have to do is annoy the kid. It just doesn't look sexual to me. A lot of telling a kid to do their homework, that annoys them. But it's not sexual. Yeah, but the – but there has to be – but the intent behind this is it has to have some kind of a sexual intent. And that's what this is. That's what I want. I want the case that doesn't say for the most part, doesn't say this is the original purpose, but that says a defendant gets a jury instruction so that the jury has to find a sexual intent. And if there's that case, I overlooked it, so I'm asking for your help in finding it. I don't know. I can't respond at the moment. I don't know what the name of that case is, but I remember reviewing it. You think there is such a case? Yes. I think there is a – I think it might be in the annotations under 647.6. Now, do you think that – it's definitely a different statute from Barron-Medina. Yes, it is. And assuming that the law is what you say it is, it would still apply even though there is no sexual contact between the individuals. Yes. So it would apply to, say, match notes, love letters, unwanted love letters to a child. Yes, it would. A conviction under – if the person was sending love letters to a child and the facts – if the person was convicted under 647.6, it would be sexual abuse of a minor. Yes. What's the ordinary meaning of the word abuse? The ordinary meaning of the word abuse? Ordinary, plain, common meaning of the word abuse. Well, the courts have interpreted – have spent a lot of time interpreting what that is. It's unwanted – it's conduct that somebody would find to be – Conduct, right. That someone would find to be offensive, deleterious to their health, their emotional or physical well-being. That would be the ordinary – I think that would be the ordinary. Does it require touching, contact, physical contact? No. I believe there's other – the other circuits that have interpreted this kind of – I think the Second Circuit has also issued – has ruled that there doesn't have to be contact. There's case law, and it's cited in – it's cited in our brief. I think it's cited in the Petitioner's Brief, too, that there doesn't have to be contact. But this is the – in this case, the child molestation statute, and I think that the – the Board has determined that this falls under the category of sexual abuse of a minor and therefore an aggravated felony, therefore. Yeah. I can understand why the service, why the IJ, why the Board would much prefer to have a series of statutes that either are or are not aggravated felonies because it saves everybody a lot of work. You don't have to investigate what the underlying facts of the crime and conviction are. All you have to do is have the fact of the conviction itself. And so here, the BIA says anybody convicted under this statute has been convicted of an aggravated felony. If we disagree, and in this case say there are certain convictions that are possible under this statute that we think simply are not aggravated felonies within the meaning of federal law, do you agree with the adversary when he says there's going to be nothing to put in the record, so there's no purpose to a remand? Do I agree that there's nothing to be put in the record? That is to say, he says under Taylor, the documents that can be adduced by the INS, that would show the actual facts, not just the conviction, but the facts underlying the conviction, the documents don't exist. Therefore, there's no purpose to the remand. Do you agree with that statement? I don't know. This is you don't know what documents might or might not turn up? I'm not sure exactly under Taylor exactly what documents would not be allowed in the record. And do you know what documents in this case might be available? I only know what's in the administrative records. I see. So why should we send it back for further proceedings? I mean, the service had it shot, and it chose to litigate this case on the categorical ground. And we should say, okay, well, now you get to go back and litigate it on an entirely different ground. It's not as though there was one ground and an alternative ground. The board decides on one ground, not reaching the alternative ground. I understand under Ventura, then we clearly have to send it back. Do we have to send it back under Ventura where the only litigation ever done by the service and undertaken by the IJ and the board was on the categorical approach? There was no argument ever made. Ventura would not preclude, does not preclude your remanding this. I understand that. I'm asking not whether it precludes, but does it require a remand? Does it require a remand? Yes. I think it would. But I don't think a remand is necessary under this case. But that's because of your categorical argument. Yes. I understand. Okay. And I'm out of time. Thank you, counsel. Okay. Comacho, Barahas versus Ashcroft is submitted. We will recess for ten minutes.
judges: Kleinfeld, Wardlaw, W Fletcher